```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/14/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY          :
COMMISSION,                            :
                                       :       22-CV-3108 (JLR) (RWL)
                    Plaintiff,         :
                                       :       **DECISION AND ORDER:**
        - against -                    :            **BIFURCATION**
                                       :
HILLSTONE RESTAURANT GROUP, INC.,      :
                                       :
                    Defendant.         :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This order addresses the parties' dispute concerning bifurcation of both discovery and trial of this enforcement action filed by the Equal Employment Opportunity Commission ("EEOC") against Hillstone Restaurant Group, Inc. ("Hillstone") under Section 4 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a).[1]

## Background

The EEOC commenced the action on April 14, 2022.  The Complaint alleges that Hillstone has intentionally discriminated against older persons who applied for front-of-house-positions at two of Hillstone's restaurants located in New York City.  ("Compl.," Dkt. 1 ¶ 9(a).)  In particular, the Complaint alleges that Hillstone has engaged in a pattern-or-practice of discrimination based on age, that Hillstone's senior management instructed their managers to hire younger applicants, and that senior management rejected

---

[1] The parties preliminarily briefed the issue in pre-conference letters.  (*See* Dkts. 38-39.)  At a conference held on August 9, 2023, the Court heard argument, informed the parties that it planned to decide the motion without further briefing, and invited the parties to say anything they had left to say on the matter.  The parties did so, and neither party asked for additional briefing.

applicants based on their age.  (*Id.* ¶¶ 9(b), (d).)  The Complaint identifies one individual as the "charging party" (*Id.* at 1 and ¶ 9(f)), but seeks permanent injunctive relief, back wages, front wages, liquidated damages, and prejudgment interest for the entire class of similarly aggrieved employees.  (*Id.* at 5-6 ("Prayer for Relief").)

On July 21, 2023, the EEOC filed a letter proposing a case management plan that bifurcates both discovery and trial.  (Dkt. 38.)  Hillstone responded on July 26, 2023, agreeing to bifurcation in general.  (Dkt. 39.)  The parties also agree about certain issues that should be addressed during Phase 1 discovery and trial and those that should be addressed during Phase 2 in the event that Hillstone is found liable in Phase 1.  The parties agree that Phase 1 should include (1) liability; i.e., whether Hillstone engaged in a pattern-or-practice of age discrimination, (2) Hillstone's affirmative defenses, and (3) injunctive relief, if warranted.  The parties further agree that, if Hillstone is found liable, Phase 2 should address damages for at least some individual claimants.  The parties disagree, however, about which phase should include two issues:  willfulness, a finding of which is required for liquidated damages, and damages for individual claimants who testify during Phase 1.  The EEOC argues that those two issues should be included in Phase 1 discovery and trial; Hillstone contends they should be included in Phase 2.

## Discussion

### A.    Pattern-Or-Practice Claims

Resolving the bifurcation dispute requires beginning with legal principles applicable to the merits of the EEOC's claim.  The EEOC advances a "pattern or practice" theory of intentional age discrimination.  (Compl. ¶¶ 9(a)-(b).)  Pattern-or-practice cases may be pursued under both Title VII of the Civil Rights Act with respect to the classes

2

protected therein (e.g., race, gender, et al.) and the ADEA with respect to age.  *See, e.g.*, *U.S. v. City of New York*, 717 F.3d 72, 82 (2d Cir. 2013) (describing pattern-or-practice cases in the context of a Title VII race discrimination suit); *Purdy v. Town of Greenburgh*, 166 F. Supp.2d 850, 865 (S.D.N.Y. 2011) (explaining in ADEA case that "a plaintiff may through statistical evidence establish a pattern or practice of ... failing to hire people over forty ... from which an inference of age discrimination may be drawn") (internal quotation marks and brackets omitted); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D.N.Y. 2001) (stating that liability phase will determine whether the employer engaged in a pattern-or-practice of discrimination against its employees in violation of the ADEA).

The Second Circuit explained the principles of pattern-or-practice claims in detail in *U.S. v. City of New York*, comparing them to individual discrimination claims.  Both types of claims "require an intent to discriminate," but, for a pattern-or-practice claim, the plaintiff must demonstrate "the employer's pervasive practice of intentional discrimination."  717 F.3d at 83.  "[A] pattern-or-practice claim requires that … discrimination was the company's standard operating procedure, the regular rather than the unusual practice, and that the discrimination was directed at a class of victims."  *Id.* (internal quotation marks, citation, and brackets omitted).

A pattern-or-practice case employs burden-shifting steps established in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1843 (1977) ("*Teamsters*").  First, "plaintiffs must produce sufficient evidence to establish a prima facie case of a policy, pattern, or practice of intentional discrimination against the protected group."  *Robinson v. Metro-North Commuter Railroad Company*, 267 F. 3d 147, 158 (2d Cir. 2001), *abrogated on other grounds*, *Johnson v. Nextel Communications Inc.*,

780 F.3d 128 (2d Cir. 2015).  Doing so gives rise to "a rebuttable presumption that an employer acted with the deliberate purpose and intent of discrimination against an entire class."  *U.S. v. The City of New* York, 717 F.3d at 87 (citing *Teamsters*, 431 U.S. at 358, 97 S. Ct. at 1866).

Typically, "a plaintiff establishes a pattern or practice through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally."  *E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp.2d 458, 468 (S.D.N.Y. 2011) (internal quotation marks omitted).  Anecdotal evidence is not required but "normally serves [the] distinct purpose" of bringing "'the cold numbers convincingly to life.'"  *Id.* (latter quoting *Teamsters*, 431 U.S. at 339, 97 S. Ct. at 1856); *see also Robinson*, 267 F.3d at 158 ("Plaintiffs have typically depended upon two kinds of circumstantial evidence to establish the existence of a policy, pattern, or practice of intentional discrimination:  (1) statistical evidence aimed at establishing the defendant's past treatment of the protected group, and (2) testimony from protected class members detailing specific instances of discrimination") (internal citation marks omitted).

Once the plaintiff meets their burden of establishing a prima facie case, "[t]he burden then shifts to the employer to demonstrate that plaintiffs' 'proof is either inaccurate or insignificant,'" *Bloomberg L.P.*, 778 F. Supp.2d at 468, (quoting *Robinson*, 267 F.3d at 159), or that there is "a nondiscriminatory explanation for the apparently discriminatory result," *Teamsters*, 431 U.S. at 360 n.46, 97 S. Ct. at 1867 n.46; *accord U.S. v. The City of New York*, 717 F.3d at 85.  "If the defendant fails to rebut the plaintiff's prima facie case, the presumption arising from an unrebutted prima case entitles the plaintiff to prevail on the issue of liability and proceed directly to the issue of appropriate relief."  *U.S. v. The*

*City of New York*, 717 F.3d at 87.  If, however, "the defendant satisfies its burden of production, the presumption arising from the plaintiff's prima facie case drops out, and the trier of fact must then determine, after a full trial, whether the plaintiff has sustained its burden of [proof] by a preponderance of the evidence."  *Id.* (internal quotations marks and citation omitted).

After liability is established, "[t]he proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy."  *Teamsters*, 431 U.S. at 362, 97 S. Ct. at 1868.  With respect to each claimant seeking damages, "the burden then rests on the employers to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons."  *Id.*; *accord U.S. v. City of New York*, 717 F.3d at 88.

**B.    Standards For Bifurcation Of Discovery**

Bifurcation of discovery is a matter within the Court's discretion.  *Priority Records, Inc. v. Bridgeport Music, Inc.*, 907 F. Supp. 725, 734 (S.D.N.Y. 1995); *see generally EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (it is well-settled that "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process").  Although the federal rules governing discovery do not expressly reference bifurcation of discovery, Federal Rule of Civil Procedure 26(d) "allows the Court to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case."  *Roper v. City of New York*, No. 15-CV-8899, 2017 WL 462270, at *1 (S.D.N.Y. Jan. 25, 2017); *accord Thrower v. Pozzi*, No. 99-CV-5871, 2002 WL 91612, at *7 (S.D.N.Y. Jan. 24, 2002).  In considering bifurcation,

courts also have invoked the court's power to stay discovery upon a showing of good cause pursuant to Federal Rule of Civil Procedure 26(c).  *See Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18-CV-4476, 2020 WL 1166047, at *5-6 (S.D.N.Y. March 11, 2020) (citing *Integrated Systems & Power, Inc. v. Honeywell International, Inc.*, No. 09-CV-5874, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009), and *Roper*, 2017 WL 462270, at *1)).

        "Also relevant to the question of bifurcation is Federal Rule of Civil Procedure 42(b), which permits a district court, 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [to] order a separate trial of any claim....'" *Local 3621*, 2020 WL 1166047, at *5 (quoting Fed. R. Civ. P. 42(b)). "Rule 42(b) … affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency.   Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted).  When assessing bifurcation of discovery, courts look to the same considerations for bifurcation of trial under Rule 42(b). *E.g.*, *Cunningham v. Big Think Capital Inc.*, No. 21-CV-02162, 2021 WL 4407749, at *4 (E.D.N.Y. Sept. 27, 2021) ("courts — when confronted with the issue [of bifurcating discovery] — look to Rule 42(b), which provides the standard for consolidating and separating cases for trial").

### C.    Application

Given the means of proof, presumptions, and burdens, pattern-or-practice cases are prime candidates for bifurcation.[2]   Indeed, bifurcation of liability and damages in pattern-or-practice cases is the norm.  *See E.E.O.C. v. Mavis Discount Tire, Inc.*, 129 F. Supp.3d 90, 119 (S.D.N.Y. 2015) ("Although *Teamsters* does not explicitly require a bifurcation of trials into two phases, it certainly suggests this approach"); *Bloomberg L.P.*, 778 F. Supp.2d at 468 ("Pattern or practice cases proceed in two phases, a liability phase and a remedial phase"); *Sterling Jewelers Inc.*, 788 F. Supp.2d at 86 ("As a general matter, Supreme Court and Second Circuit caselaw support the use of bifurcation in Title VII action asserting pattern-or-practice discrimination"); *Equal Employment Opportunity Commission v. Darden Restaurants, Inc.*, No. 15-20561, 2016 WL 9488708, at *4 (S.D. Fla. May 20, 2016) (in ADEA case, "[s]tage one of discovery and trial shall address only liability" and "[s]tage two of discovery and trial will address individual claims of discrimination").  The parties agree on this basic framework.  They disagree, however, on which phase should address (1) damages for individuals who testify to liability in Phase 1, and (2) willfulness supporting liquidated damages.

### 1.    Individual Damages

The Court first addresses the issue of individual damages.  As noted above, a plaintiff may establish liability with both statistics and anecdotal evidence from individuals. The EEOC no doubt will seek to bring color to the otherwise dull realm of statistics with

---

[2] If the employer is found to have engaged in a pattern or practice of unlawful discrimination, then injunctive relief also can be determined at the end of Phase 1.  *See E.E.O.C. v. Sterling Jewelers Inc.*, 788 F. Supp.2d 83, 86-87 (W.D.N.Y. 2011).  The EEOC and Hillstone agree that injunctive relief is a Phase 1 issue.

testimony from the individual charging party as well as other individual claimants. Indeed, during the August 9, 2023 conference, the EEOC indicated there may be as many as 10, 15, or even 25 individual claimants potentially testifying in a Phase 1 trial.

The EEOC argues that pursuing discovery and trying those individuals' damages during Phase 1 will be efficient and avoid the prospect of having those claimants provide further discovery and return for testimony during Phase 2. True. But there will be no need for further discovery or testimony from any of those individuals – or any other claimants – if Hillstone prevails on liability during Phase 1. In that event, there will no Phase 2 at all. *See Amato*, 170 F.3d at 316 ("bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue").

On the other hand, even if the issue of damages for claimants who testify at the liability stage is folded into Phase 1, and Hillstone is found to have engaged in a discriminatory pattern or practice, there necessarily will be a Phase 2 for determining damages for those claimants who did not participate in Phase 1. Phase 2 will focus on a variety of facts specific to each individual such as their qualifications, non-discriminatory reasons they individually may not have been hired, applicable rate of pay, and efforts to mitigate. Focusing on those individualized issues will bog down Phase 1 discovery, particularly given that the EEOC contemplates far more than just one or two claimants who would testify during Phase 1. Including some of the individual claimants' damages issues in Phase 1 will be less, not more, efficient and also poses the prospect of confusing the jury, whose task during Phase 1 will be to determine liability. Confining individualized damages issues to Phase 2 thus promotes efficiency and avoids potential confusion and

resulting prejudice.  *See* Fed. R. Civ. P. 42(b).  Tellingly, the EEOC has not cited any pattern-or-practice cases in which courts included discovery and trial of individual damages issues during Phase 1.  For all these reasons, the Court rejects the EEOC's request to include individual damages as part of Phase 1 discovery.

### 2. Willfulness

The second issue, willfulness, is not as clear cut.  A violation of the ADEA may include, in addition to compensatory damages, an award of liquidated damages.  *See* 29 U.S.C. § 626(b).  However, liquidated damages may be awarded only if the employer's conduct is found to be willful.  *Id.*; *Cross v. New York City Transit Authority*, 417 F.3d 241, 252 (2d Cir. 2005).  The amount of liquidated damages is fixed by statute as an amount equal to unpaid wages.  29 U.S.C. § 216(b) (employers found to be liable shall pay, *inter alia*, "the payment of wages lost and an additional equal amount as liquidated damages"); *Cross*, 417 F.3d at 252 ("Under the ADEA, a plaintiff who establishes a 'willful violation' of that statute can be awarded liquidated damages in an amount equal to unpaid wages"). "Well-established precedent recognizes that the willfulness necessary to support liquidated damages under the ADEA can be established either by proof that a defendant actually knew that his conduct violated federal law *or* by reckless disregard of that fact." *Id.* (emphasis in original) (citing cases); *see also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617, 113 S. Ct. 1701, 1710 (1993) (reaffirming the definition of willful set forth in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126, 105 S. Ct. 613, 624 (1985)).

Willfulness thus implicates both liability and damages.  A finding of willfulness focuses on the employer's conduct and state of mind (knowledge or reckless disregard). Similarly, the liability phase of a pattern-or-practice case focuses on an employer's

conduct and state of mind (intent), proven by both statistical and anecdotal evidence to demonstrate the employer's intentional pervasive discrimination.  Proof may also entail "documents from the employer's files and testimony from employer representatives." *E.E.O.C. v. Lawler Foods, Inc.*, 128 F. Supp.3d 972, 974 (S.D. Tex. 2015) (explaining proof relevant to establishing pattern-or-practice liability).  In short, discovery for pattern-or-practice liability overlaps with discovery for determining willfulness.

They are not, however, co-extensive.  Phase 2 will determine if the employer had nondiscriminatory reasons for not hiring any particular individual claimant, and, if not, the extent of individual damages and corresponding liquidated damages for that respective claimant.  Liquidated damages will be assessed on an individualized basis and awarded only if the EEOC proves that Hillstone willfully discriminated against that particular individual.  Indeed, an employer who acted intentionally in violating the ADEA may not necessarily have done so willfully.

As the Second Circuit has explained, "[i]n assessing willfulness, a jury does not consider whether the employer's conduct was intentional or deliberate; such a finding must be made in any event. Rather, the jury must consider whether the employer, when engaging in such conduct, knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Peterson v. Insurance Co. of North America*, 40 F.3d 26, 31 (2d Cir. 1994) (internal quotation marks omitted); *see also Thurston*, 469 U.S. at 130, 105 S. Ct. at 626  (holding that employer intentionally discriminated on the basis of age as a matter of policy, but did not act willfully in doing so where employer sought legal advice on complying with both the ADEA and a collective bargaining agreement); *Mulqueen v. Daka, Inc.*, 909 F. Supp. 86, 96 (N.D.N.Y.1995) ("The two tiered

liability scheme discussed in *Thurston* and *Hazen Paper* consists of intentional conduct and knowledge that such conduct is in violation of the ADEA. Under this scheme, conduct which is a violation of the ADEA because it is intentional, may or may not be acted out with the knowledge that such conduct is in violation of the act"), *aff'd*, 104 F.3d 351 (2d Cir. 1996), *abrogated on other grounds*, *Thornley v. Penton Publishing, Inc.*, 104 F.3d 26 (2d Cir. 1997); *Dittman v. Ireco, Inc.*, 903 F. Supp. 347, 349 (N.D.N.Y. 1995) (an employer "may avoid a finding of willfulness if it shows that it acted in good faith and nonrecklessly" because "(1) the employer was ignorant of the correlation between the selection mechanism and age; [or] (2) the employer believed that age was a bona fide occupational qualification …; [or] (3) the employer believed the employee was not covered by the ADEA").

Hillstone points to cases within the Second Circuit in which courts have "deferred all monetary relief to Phase II," although none of those cases addressed the willfulness issue. (*See* Dkt. 39 at 3 (citing *Mavis*, *Bloomberg L.P.*, and *Sterling Jewelers*).[3]) The EEOC references a case in which the court determined, in the context of Title VII discrimination claims, that eligibility for punitive damages would be determined during Phase 1, while the amount of punitive damages, if awarded, would be determined in Phase 2. *See E.E.O.C. v. Outback Steak House of Florida, Inc.*, 576 F. Supp.2d 1202,

---

[3] The courts in both *Mavis* and *Sterling Jewelers* determined that consideration of punitive damages should be deferred to Phase 2. *Mavis*, 129 F. Supp.3d at 120; *Sterling Jewelers*, 788 F. Supp.2d at 91-92. The court in each case came to that conclusion based on the law of punitive damages, which requires that the extent of punitive damages be considered in relation to compensatory damages, a Phase 2 issue. The same reasoning does not apply in the instant case. Although liquidated damages are considered punitive in nature, the basis for awarding them turns solely on the willfulness inquiry, and their amount, if warranted, is a set amount equal to unpaid wages.

1206 (D. Colo. 2008) (denying motion to defer issue of eligibility for punitive damages to Phase 2 trial in gender discrimination case because, among other reasons, "the evidence required to establish liability for punitive damages significantly overlaps with the evidence necessary to prove a pattern or practice of discrimination").  Neither party, however, has cited any case specifically addressing whether willfulness in support of liquidated damages in an ADEA pattern-or-practice case should be addressed during Phase 1 or Phase 2.

Where does that leave us?  As explained above, liability and willfulness share overlapping, but not co-extensive, factual inquiries.  Even if Hillstone may be able to demonstrate that its conduct was not willful as required to impose liquidated damages, it would make little sense, and to a large extent would be impossible, to distinguish between Phase 1 discovery of Hillstone's intent and Phase 2's discovery of willfulness and whether Hillstone acted with knowledge or reckless disregard of discrimination.

The calculus might be different if the EEOC sought to prove Hillstone's Phase 1 liability based purely on statistical analysis without supplementation by anecdotal evidence or discovery from Hillstone's files.  *See Bloomberg L.P.*, 778 F. Supp.2d at 469 ("Statistics are so central to pattern or practice cases that they 'alone can make out a prima facie case of discrimination if the statistics reveal' a gross disparity") (quoting *Robinson*, 267 F.3d at 158).  In that scenario, there would be no overlap between liability and willfulness.  But the EEOC has not suggested that it plans to proceed in that fashion.

At the same time, by virtue of the distinction between intent required for liability and knowledge or reckless disregard required for willfulness, there may be evidence relevant to willfulness that is not relevant to establishing liability.  Just as Hillstone will

have the opportunity in Phase 2 to prove that it acted for nondiscriminatory reasons with respect to individual claimants, it conceivably could prove that it did not act willfully with respect to some individual claimants even if it acted willfully with respect to others.

In sum, there are aspects of willfulness common to Phase 1 as well as aspects unique to Phase 2.  Based on all the circumstances, the Court concludes that efficiency and economy, not to mention common sense, warrant including in Phase 1 discovery of evidence of Hillstone's intent, knowledge, or reckless disregard with respect to age discrimination and violation of the ADEA.  The extent to which willfulness should be deferred to Phase 2 for trial is a different question that may have a different answer.

**D.     Trial**

Although this Court has resolved the bifurcation dispute as it relates to discovery, it may not do so with respect to trial.  "[T]he fact remains that the parties have not consented to trial before this magistrate judge; the case has been referred for pretrial management only. … Any decision about the conduct of the trial remains with the district judge, and outside the scope of that referral."  *Lawler Foods*, 128 F. Supp.3d at 974; *see also Plasmanet, Inc. v. Apax Partners, Inc.*, No. 02-CV-9290, 2003 WL 21800981, at *1 n.1 (S.D.N.Y. Aug. 5, 2003) (deferring decision on bifurcation with respect to trial but not discovery because trial management "rests within the discretion of the trial judge"); *see generally* Fed. R. Civ. P. 42(b) (committing decision to bifurcate trial to discretion of the court).  Accordingly, the Court will deny the parties' applications to bifurcate trial without prejudice.

**Conclusion**

For the foregoing reasons, discovery is bifurcated.  Phase 1 shall encompass:  (1) liability; i.e., whether Hillstone engaged in a pattern-or-practice of age discrimination, (2) Hillstone's affirmative defenses, and (3) injunctive relief, if warranted.  Phase 2 discovery shall encompass all damages-related issues, including the amount of any liquidated damages.  Notwithstanding the foregoing, Phase 1 may include discovery of Hillstone's intent, knowledge, or reckless disregard with respect to age discrimination and violation of the ADEA.  The Court denies without prejudice the parties' requests to bifurcate trial. The Clerk of Court is respectfully directed to terminate the letter motion at Dkt. 38.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:    August 14, 2023
          New York, New York